**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-24-00782-001-TUC-JCH (EJM) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Magaly Guadalupe Caballero Valdez, | |
| Defendant. | |

Before the Court is the Government's Motion for Stay of Release and Review of Magistrate Judge's Release Order ("Motion") (Doc. 14), filed pursuant to 18 U.S.C. § 3145(a). The Motion appeals Magistrate Judge Bruce G. Macdonald's decision to release Defendant Magaly Guadalupe Caballero Valdez ("Defendant") on personal recognizance. Doc. 13. Defendant opposes the Government's Motion. Docs. 20 & 21. For the following reasons, the Court will deny the Motion (Doc. 14) and affirm the Release Order (Doc. 13).[1]

## I. Background

On October 25, 2023, United States Border Patrol agents encountered Defendant at an immigration checkpoint along Interstate 19 near Amado, Arizona. Doc. 16 at 1. A trained canine alerted to possible narcotics in her vehicle during primary inspection and Defendant was detained for a secondary inspection. *Id.* Officers found twenty-five packages of fentanyl concealed inside the vehicle's spare tire compartment. *Id.* at 1–2. After being advised of her *Miranda* rights, Defendant told law enforcement that she was heading

---

[1] The Court finds these matters appropriate for resolution without an oral hearing. Fed. R. Civ. P. 78(b).

to Tucson to meet a friend and that she borrowed the vehicle from her ex-boyfriend the night before. *Id.* at 2 Defendant allowed law enforcement to look through her cellphone during the conversation. *Id.* Law enforcement found a WhatsApp message from an unnamed individual informing Defendant "they are waiting" (translated from Spanish). *Id* at 2; Doc. 16-1. The message asked whether Defendant was near Tucson or had been delayed. Doc. 16 at 2. Defendant terminated the interview after law enforcement confronted her with the WhatsApp message and she was released the same day. *Id.*

On February 21, 2024, the Government filed an indictment charging Defendant with one count of Conspiracy to Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 846, and one count of Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). Doc. 1.

On February 28, 2024, Defendant was arrested. Doc. 5. After an initial appearance before Judge Eric J. Markovich, Defendant was detained pending a continuance of the detention hearing. Doc. 7. Pretrial Services recommended Defendant be released on her personal recognizance, provided Defendant agreed to abide by certain enumerated conditions. Doc. 12.

On March 7, 2024, Judge Macdonald ordered Defendant released subject to enumerated conditions. Docs. 13, 13-1. The Government orally moved to stay Defendant's release pending the outcome of an appeal, which Judge Macdonald granted. Doc. 13. The Government filed the instant Motion (Doc. 14) and an addendum (Doc. 16), seeking review of the release order and requesting Defendant's pretrial detainment.

## II. Legal Standard

A district court's review of a magistrate judge's detention order is de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates the release of a person pending trial unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). It is presumed that there are no such conditions if there is probable cause to believe that the defendant has violated a provision of the Controlled Substances Act or the Controlled

Substances Import and Export Act punishable by at least 10 years in prison. 18 U.S.C. § 3142(e)(3)(A). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). If defendant proffers evidence to rebut the presumption of dangerousness or flight risk, the Court then considers four factors from the Bail Reform Act to determine whether to detain or release the defendant:

> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

*Id.*; 18 U.S.C. § 3142(g).

The Government must prove that the defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Government must prove the defendant presents a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in the defendant's favor. *Id.* at 1405. However, the presumption against release remains, even when rebutted, and is to be considered alongside all other relevant factors. *Hir*, 517 F.3d at 1086.

**III.   Analysis**

   **A.   Rebuttable Presumption Favoring Detention**

The Bail Reform Act creates a rebuttable presumption that a defendant must be detained if there is probable cause to believe that she violated a provision of the Controlled

Substances Act that is punishable by a maximum of 10 years or more. 18 U.S.C. § 3142(f)(1)(A).

Here, the Government asserts that the statutory maximum for the offenses committed by Defendant is 20 years. Doc. 16 at 3. Based on discovery of the narcotics concealed in Defendant's vehicle and the WhatsApp message on Defendant's phone, the Court finds that such probable cause exists. *See* Doc. 1; Doc. 16 at 1–2. The burden then shifts to Defendant to proffer evidence to rebut the presumption of dangerousness or flight risk.

Defendant points to her United States citizenship and presence in the United States during the months between the initial drug seizure and her arrest. Doc. 21 at 6. Defendant has maintained her employment in Nogales, Arizona and she also continues to care for her two minor children, who are United States citizens and attend elementary school in Nogales, Arizona. *Id.* Defendant has no criminal history, no mental health issues, no history of substance abuse and there is no evidence that she is a flight risk. *Id.* at 6–7. Further, Defendant is not charged with a violent crime and there is no evidence that she is a danger to the community. *Id.* at 7. Because this is sufficient to rebut the presumption, the Court considers the four Bail Reform Act factors.

### B. Bail Reform Act Factors

#### 1. Nature and Circumstances of the Offense

Defendant is charged with one count of Conspiracy to Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 846, and one count of Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). The Court may consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

Here, the nature and circumstances of the offense favor detention. First, the possible punishment provides an incentive to flee: Defendant is charged with two separate counts and faces a 20-year statutory maximum. Doc. 16 at 3, 5. Second, given the nature of the offense, the United States has a strong interest in mitigating and preventing the circulation

of narcotics due to the considerable harm they pose to individuals and the community. On balance, this factor weighs against release.

### 2. Weight of the Evidence Against Defendant

The weight of the evidence is the least important factor that the Court considers and is not a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); *Townsend*, 897 F.2d at 994. Here, Defendant was the sole occupant of a vehicle found to be concealing twenty-five packages of fentanyl. Doc. 16 at 1. Defendant made post-*Miranda* statements that she was not the registered owner of the vehicle, that she had picked it up the previous evening, and that she was meeting a friend in Tucson. *Id.* at 2. Upon consent to look through Defendant's phone, agents discovered a WhatsApp message, sent approximately 1.5 hours after Defendant was detained, asking whether Defendant was near Tucson or had been delayed. *Id.* Defendant terminated her interview with agents once confronted with the WhatsApp message. *Id.* The weight of the evidence for the instant charges is neutral.

### 3. History and Characteristics of Defendant

The Defendant is a 24-year-old female who has resided in Nogales, Sonora, Mexico with her two minor children for the past two years. Doc. 6 at 2. Defendant has lived in Mexico for most of her life, except for 2018 to 2022, when she resided in Kansas and Ohio. *Id.* Defendant is a United States citizen and does not possess a U.S. passport. *Id.* For the past two years, Defendant has traveled from Nogales, Mexico to Nogales, Arizona daily for employment and for her children's schooling. *Id.* Defendant has worked in agriculture for Divine Flavor in Nogales, Arizona for the past two years. *Id.*

Defendant provided some information to Pretrial Services that conflicted with information provided by her brother, Carlos Trazvina (Mr. Trazvina). *Compare* Doc. 6 *with* Doc. 12 (e.g., Defendant stated she she is an only child, and her mother is a United States Citizen; Mr. Trazvina—a brother who Defendant said was an uncle—stated Defendant has two siblings, and Defendant's mother is a citizen and resident of Mexico). Mr. Trazvina is a United States citizen, residing in Nogales, Arizona for the past three months. Doc. 12 at 1–2. Mr. Trazvina appeared at Defendant's March 7, 2024, detention hearing, offered to

post a $3,000 bond, and offered to act as a third-party custodian and allow Defendant to stay at his residence in Nogales, Arizona. Doc. 21 at 6. Based on Mr. Trazvina's limited ties to the United States, Pretrial Services did not screen him for potential surety or as a third-party custodian. Doc. 12 at 2.

Defendant is in good physical and mental health. Doc. 12 at 2. Defendant reports minimal consumption of alcohol in social settings starting at age 19, but that she last consumed alcohol three years ago. Doc. 6 at 3. Defendant reports monthly marijuana use and is amenable to substance abuse treatment. *Id.* Defendant has no prior criminal history. *Id.*

The Government argues Defendant has strong social and familial ties to Mexico and that her U.S. citizenship is, essentially, her only verifiable long-standing tie to the United States. Doc. 16 at 4. The Government also argues Defendant made several duplicitous statements to Pretrial Services—seemingly to bolster her ties to the United States while minimizing her ties to Mexico—that were contradicted by her brother. *Id.* at 5. The Government argues that Defendant's "life for all practical purposes is in Mexico," which, coupled with the severity of the punishment she is facing, may motivate Defendant to abscond. *Id.*

Defendant argues that her behavior—continuing to go to work and take her children to school in Nogales, Arizona—during the four months between the drug seizure and her arrest evidence a willingness to remain in the United States. Doc. 21 at 6. While Defendant's brother was not screened as a potential third-party custodian due to his recent move to the United States, he is willing to let Defendant stay at his residence in Nogales, Arizona. *Id.* Defendant has maintained employment in the United States for the past two years. *Id.* Defendant further argues that she is in good physical and mental health, she has no history of substance abuse, she has no prior criminal history, and there is no evidence that she is a danger to the community or a flight risk. *Id.* at 7.

While Defendant has been living in Nogales, Mexico for the past two years, she traveled into the United States almost daily. Defendant has also been employed in the United States for most of the past six years: one year in Kansas, three years in Ohio, and

the most recent two years in Arizona. Defendant is the sole caretaker for her two minor children, who attend school in Nogales, Arizona. Defendant has no criminal history or other activity to suggest she would fail to appear. Defendant's substance use should not affect her ability to follow the ordered conditions of release. Defendant appears to have familial resources to help her find a residence in the United States that will satisfy the conditions of release. Considered together, the Defendant's history and characteristics, family ties, employment ties, and lack of criminal history, weigh in favor of release.

### 4. Dangerous Nature

The Government briefly mentions the dangers of fentanyl on communities generally but does not argue that Defendant's release poses a danger to person or community. *See* Doc. 16 at 5. Defendant has no prior criminal history, she is not being charged with a violent offense, and there is no evidence that Defendant has engaged in any violent activity. Doc. 21 at 7. Defendant's release is unlikely to pose a danger to person or community, which weighs in favor of her release.

## IV. Conditions of Release

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of risk, a defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in Defendant's favor. *Motamedi*, 767 F.2d at 1405.

The Government has raised some concerns about Defendant's risk of nonappearance due to her strong social and familial ties to Mexico. In assessing nonappearance, however, Pretrial Services has identified conditions to minimize such risk. Docs. 12 & 13-1. The Court finds that the proffered alternatives to custody—requiring Defendant to abide by the conditions articulated by Pretrial Services—reasonably assure Defendant's appearance at future proceedings.

///

///

V. **Order**

**IT IS ORDERED DENYING** the Government's Motion (Doc. 14) and affirming Judge Macdonald's March 7, 2024, release order (Doc. 13). Defendant shall be released, subject to the pretrial conditions outlined in the release order.

Dated this 22nd day of March, 2024.

John C. Hinderaker
United States District Judge